UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| HONEST ABE ROOFING FRANCHISE, INC., )<br>　)<br>　　　　　　　　　　　　*Plaintiff*,　　)<br>　)<br>　　　vs.　　　　　　　　　　　　　)　　No. 2:23-cv-00395-JMS-MJD<br>　)<br>LESJON HOLDINGS, LLC,　　　　　　)<br>JONATHAN KEIM, and　　　　　　　　)<br>LESLI KEIM,　　　　　　　　　　　　)<br>　)<br>　　　　　　　　　　　　*Defendants*.　)  | |

### ORDER

Plaintiff Honest Abe Roofing Franchise, Inc., ("Honest Abe") runs a roofing franchise business. Defendant Lesjon Holdings, LLC ("Lesjon Holdings") was a franchisee, run by its sole members, Defendants Jonathan Keim and Lesli Keim. After a dispute over the performance of Defendants' obligations under franchise-related agreements, Honest Abe sued Defendants in Indiana's Vigo Superior Court alleging that Defendants have breached a Franchise Agreement and its personal guaranty. Defendants removed the case to this Court and have now filed a Motion to Dismiss or Transfer, [Filing No. 14.] The Motion is ripe for the Court's consideration.

### I.
### STANDARD OF REVIEW

Defendants challenge venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1404. [Filing No. 14.] Under Rule 12(b)(3), a party can move to dismiss an action for improper venue. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016). "Rule 12(b)(3) is a somewhat unique context of dismissal in that a court may look beyond the mere allegations of a complaint, and need not view the allegations of the complaint as the exclusive basis for its decision." *Id*. Although the Court must generally accept the allegations in the plaintiff's

1

complaint as true, "[w]here one party makes a bald claim of venue and the other party contradicts it, a district court may look beyond the pleadings to determine whether the chosen venue is appropriate." *Id.* at 809-10. That is to say, a plaintiff is entitled to "reasonable inferences from the facts." *Jackson v. Payday Financial, LLC*, 764 F.3d 765, 773 (7th Cir. 2014). "When a defendant challenges venue, the plaintiff bears the burden of establishing proper venue." *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F.Supp.3d 870, 875 (N.D. Ill. 2015) (*citing Int'l Travelers Cheque Co. v. BankAmerica Corp.*, 660 F.2d 215, 222 (7th Cir. 1981)).

Even if venue is proper, a case can be transferred under 28 U.S.C. § 1404. It states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* § 1404(a). "[T]he overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice.'" *Atlantic Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013). "[I]n all but the most exceptional cases," the interest-of-justice determination gives way to the "controlling weight" of a valid forum selection clause. *Id.* Whether to enforce a forum selection clause is a determination governed by federal law. *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988) (for a motion to transfer pursuant to Section 1404, "federal law, . . . governs the District Court's decision whether to give effect to the parties' forum-selection clause."). "District courts have broad discretion to grant or deny a motion to transfer under [28 U.S.C.] § 1404(a), and will not be reversed absent a clear abuse of discretion." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

## II.
### FACTUAL AND PROCEDURAL BACKGROUND

Honest Abe runs a roofing franchise business. [Filing No. 1-1 at 40-41.] An Indiana corporation, Honest Abe awards franchises that "operate a business that will offer customers roof repair services, new roof installation, gutter installation, siding installation, and such other products and services." [Filing No. 1-1 at 40.] In early 2019, Jonathan Keim and Lesli Keim, who are husband and wife, attended a "Discovery Day" seminar to learn about the Honest Abe franchise system at Honest Abe's headquarters in Terre Haute, Indiana. [Filing No. 22 at 2.] Later that May, the Keims created a franchisee in their company, Lesjon Holdings, by signing a Franchise Agreement. [Filing No. 22 at 2.] The Franchise Agreement states, "This Agreement and the contemporaneously executed Exhibits, Addenda and Schedules hereto and the Franchise Disclosure Document constitute the entire agreement between us, you and the Principal Owners concerning the subject matter hereof." [Filing No. 1-1 at 223.] That includes a "Principal Owner's Guaranty," ("the Guaranty"), which obligates the Keims to financially guarantee Lesjon Holdings' performance of the Franchise Agreement. [Filing No. 1-1 at 223-24.]

The Franchise Agreement and Guaranty both contain forum selection clauses. The Franchise Agreement states that "jurisdiction and venue for court litigation shall be in Illinois." [Filing No. 1-1 at 219.] The Guaranty states that Honest Abe "may enforce its rights regarding it in the state or federal courts in the State of Indiana. Each Guarantor irrevocably submits to the jurisdiction and venue of such courts." [Filing No. 1-1 at 224.]

The Keims agreed to operate their business in Illinois. The Franchise Agreement states that the "Franchisee's Designated Area shall be defined as that area within . . . Illinois." [Filing No. 1-1 at 156.] The Franchise Agreement "hereby approve[d] the location of the Franchised

3

Business as: Charleston, IL." [Filing No. 1-1 at 156.] The Keims, who are the sole members of Lesjon Holdings, maintain business contact information in Illinois. [Filing No. 1-1 at 156.]

In June 2019, the Keims spent some time in Terre Haute undergoing training in Honest Abe's "confidential business system in the operation of their franchise business." [Filing No. 22 at 3.] From then through June 2022, Honest Abe hosted meetings, received royalties from Defendants, collected sale reports, and sent correspondence related to Defendants' franchisee business. [Filing No. 22 at 3.]

Eventually, the parties came to a dispute. Honest Abe alleges that by July 2022 Defendants "began defaulting under the Franchise Agreement, including 1) failing to submit their monthly sales reports to Honest Abe (in Terre Haute); 2) failing to communicate certain data to Honest Abe (in Terre Haute) by means of recording the same in Honest Abe's proprietary customer relationships management system; and 3) failing to spend minimum amounts on local advertising." [Filing No. 22 at 3-4.] For those alleged defaults, Honest Abe terminated the Franchise Agreement. [Filing No. 22 at 4.] On July 11, 2023, Honest Abe sued Defendants in Vigo Superior Court. [Filing No. 1-1 at 1.] Honest Abe alleged two counts: breach of the Franchise Agreement, and breach of the Guaranty. [Filing No. 1-1 at 12-15.] Defendants have removed to this Court and filed a Motion to Dismiss or Transfer. [Filing No. 1; Filing No. 14.] They move to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) or in the alternative move to transfer to the Central District of Illinois under 28 U.S.C § 1404. [Filing No. 14 at 1.]

## III.
### DISCUSSION

### A.     The Forum Selection Clauses

Defendants argue that the Franchise Agreement contains a binding and mandatory forum selection clause, requiring this case to be transferred to Illinois. [Filing No. 15 at 9.] Defendants note that the Franchise Agreement states that "jurisdiction and venue for court litigation shall be in Illinois. . . . Any provision in the Franchise Agreement that designates jurisdiction or venue in a forum outside the State of Illinois is void." [Filing No. 15 at 9 (quoting Filing No. 1-1 at 219).] Defendants further argue that the Illinois provision is more specific, which controls over the Indiana provision, which is more general. [Filing No. 15 at 9.]

In response, Honest Abe argues that the Guaranty contains a binding and mandatory forum selection clause, requiring this case to be litigated—not in Illinois—but in Indiana. [Filing No. 22 at 3.] Honest Abe notes that the Guaranty states that "Honest Abe Roofing Franchise, Inc. may enforce its rights regarding it in the state or federal courts in the State of Indiana. Each Guarantor irrevocably submits to the jurisdiction and venue of such courts." [Filing No. 22 at 3 (quoting Filing No. 1-1 at 224).] Honest Abe argues that the Guaranty is a separate contract from the Franchise Agreement and that a forum selection clause in a franchise agreement does not extend to that agreement's personal guaranty. [Filing No. 22 at 8.]

Defendants reply that "Honest Abe's theory hinges on a hyper-technical reading of the contract documents and the law. Without contractual language specifying that documents are unrelated, writings executed at the same time and relating to the same transaction will be construed together in determining the parties' intent." [Filing No. 24 at 5.] Defendants note that the Franchise Agreement and Guaranty were executed on the same day as a "singular, 'entire agreement' to govern their franchise relationship." [Filing No. 24 at 6 (citation omitted).]

5

Defendants further argue that "the Keims could . . . breach their personal guaranty [only] if Lesjon breached the Franchise Agreement." [Filing No. 24 at 7.] According to Defendants, allowing the Guaranty to control the Franchise Agreement would be tantamount to nullifying the Illinois Franchise Disclosure Act. [Filing No. 24 at 7.]

Both clauses appear contradictory, both clauses appear mandatory, but only one clause can be enforced. See *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) ("[W]here venue is specified with mandatory or obligatory language, the clause will be enforced[.]"); *Cont'l Grain Co. v. The FBL-585*, 80 S. Ct. 1470, 1474 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."); see also *Farm Bureau Gen. Ins. Co. of Michigan v. Sloman*, 871 N.E.2d 324, 332-33 (Ind. Ct. App. 2007) (refusing to enforce forum selection clause that would split case into multiple lawsuits in multiple forums). The Court must decide which forum selection clause governs. This analysis turns on which of this case's contractual terms are primary, and which are secondary.

1. *Primary and Secondary Contractual Terms*

To determine which conflicting forum selection clause to enforce, federal courts have examined the claims at issue in the case, considering which contractual terms are primary and which are secondary. E.g., *Buffet Crampon S.A.S. v. Schreiber & Keilwerth, Musikinstrumente GmbH*, Cause No. 3:09-CV-347RM, 2009 WL 3675807 (N.D. Ind. Nov. 2, 2009). *Buffet Crampon* concerned a contract dispute over sale and control of partially completed clarinets. *Id.* at *8-9. As in this case, *Buffet Crampon* analyzed contradictory forum selection clauses. *Id.* One agreement concerned the works-in-progress themselves. *Id.* Another agreement concerned whether a party could use the works-in-progress to sell under its own brand. *Id.* Because the

6

former agreement "must [have been] construed to determine [the] central issue, its forum selection trump[ed] the forum selection clauses" in the latter agreement. *Id.* That is, primary trumps secondary.

In this case, claims under the Franchise Agreement are primary, and those under the Guaranty are secondary. The Guaranty requires the Keims to "personally guarantee the franchisee's performance under the Franchise Agreement." [Filing No. 1-1 at 223.] It requires them to guarantee that "the Franchisee will punctually pay and perform each and every undertaking, agreement and covenant set forth in the Franchise Agreement." [Filing No. 1-1 at 223.] And it requires them to be "personally liable for the breach of each and every provision in the Franchise Agreement." [Filing No. 1-1 at 223.] That is, a breach of the Guaranty requires a breach of the Franchise Agreement. Honest Abe's case ultimately rests on the Franchise Agreement, which requires venue to be in Illinois.[1] For venue purposes, if the Guaranty clause controlled the Franchise Agreement, the tail would wag the dog. Unless public interest factors militate to the contrary, this case's venue should be in Illinois.

2. *Evaluating Public Interest Factors*

When evaluating a motion to transfer in the presence of a valid forum selection clause, a district court may consider arguments against transfer only with regard to the public interest. *Atl. Marine Constr. Co.*, 571 U.S. at 64. Public interest factors include "the administrative

---

[1] Honest Abe contends that the Franchise Agreement and the Guaranty are completely separate agreements. [*E.g.*, Filing No. 22 at 9-10.] The Franchise Agreement's text specifically states the contrary: "This Agreement and the contemporaneously executed Exhibits, Addenda and Schedules hereto and the Franchise Disclosure Document constitute the entire agreement between us, you and the Principal Owners concerning the subject matter hereof." [Filing No. 1-1 at 150.] Even if they were separate agreements, they are sufficiently related such that the Court would interpret them together, construing the related writings against the drafter. *Lippo v. Mobil Oil Corp.*, 776 F.2d 706, 714 (7th Cir. 1985) ("[a] contract containing inconsistencies or conflicting terms is to be construed against the drafter.").

difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6. Overall, where the litigation is subject to a contract containing a forum selection clause, the party acting in violation of a forum selection clause "bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Id.* at 66.

Defendants argue that the public interest factors weigh in favor of transferring to Illinois. [Filing No. 15 at 10-11.] They argue that the Southern District of Indiana "is among the busiest in the country. Indeed, it is one of the ten busiest Districts in the country." [Filing No. 15 at 11.] In comparison, Defendants argue, "[t]he Central District of Illinois "faces far less court congestion." [Filing No. 15 at 11.] Defendants argue that "[t]his case centers on an Illinois-based franchise and a franchise agreement governed by Illinois law." [Filing No. 15 at 11.]

Honest Abe responds that "Defendants have not shown that the [public interest factors] overwhelmingly favor transferring venue from" the Southern District of Indiana. [Filing No. 22 at 11.] It argues that "more civil actions per judgeship were filed in the Southern District of Illinois than in" the Southern District of Indiana. [Filing No. 22 at 11.] Further, Honest Abe argues that the Court is "more than sufficiently familiar with the relevant law," noting that its claims "are not brought under the Illinois Franchise Disclosure Act . . . but are common law breach of contract claims under Indiana law." [Filing No. 22 at 11.] Even if Illinois law does apply, Honest Abe argues, the Court "is familiar with Illinois law." [Filing No. 22 at 11.] Honest Abe argues further that "[h]arm caused by Defendants' breaches of the Franchise Agreement and Guaranty . . . is felt in this District's community — regardless of Defendants' location." [Filing No. 22 at 12.] Proximity to evidence and witnesses is not a decisive consideration, Honest Abe

8

argues, because "this Court is a mere 25-minute drive from Defendants' home" in Illinois and "records of Defendants' defaults under the Franchise Agreement and Guaranty are maintained in this District." [Filing No. 22 at 12.]

Defendants reply that Honest Abe's statistics focus on the Southern District of Illinois, but Defendants seek transfer to the Central District of Illinois. [Filing No. 24 at 9.] They continue that "although this Court can apply Illinois law, an Illinois Court is 'likely more familiar with' Illinois law than a federal court in Indiana." [Filing No. 24 at 10 (citation omitted).] Defendants aver that "Honest Abe's reliance on Indiana law is . . . overstated. Indiana law can be relevant only after the Court determines whether there was a breach of the Franchise Agreement, which is governed by Illinois law." [Filing No. 24 at 10 (emphasis omitted).] Illinois, the Defendants contend, "has a significant interest in enforcing its franchise legislation against unregistered franchisors, particularly when Illinois citizens and Illinois-based franchisees are involved." [Filing No. 24 at 10.]

As the Court is well aware, the Southern District of Indiana has a significant caseload. Measured by actions per judgeship, the Southern District of Illinois ranks among the top ten busiest districts in the country. United States Courts, *Table N/A—U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics* at 51 (September 30, 2023), https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/09/30-1. (PDF data table). Meanwhile, the Central District of Illinois's docket ranks below 50th place, comparatively less congested. *Id.* at 48.

Additionally, as the Court's analysis has clarified, Honest Abe's claims boil down to the Franchise Agreement, which is interpreted under Illinois Law, applied to an Illinois franchise, and governed by the Illinois Franchise Disclosure Act. See *To-Am Equipment Co., Inc. v.*

9

*Mitsubishi Caterpillar*, 152 F.3d 658, 662 (7th Cir. 1998) ("Illinois, like many other states, has made it clear that parties cannot opt out of the coverage of the Act for Illinois franchisees."); *cf. Wright-Moore Corp., v. Ricoh Corp.*, 908 F.2d 128, 132 (7th Cir. 1990) (recognizing Indiana as having public policy in favor of applying its own law for its own franchisees). Even Indiana courts have recognized transfers to Illinois for contract disputes over a non-Indiana franchise. *See, e.g., Horner v. Tilton,* 650 N.E.2d 759, 764 (Ind. Ct. App. 1995) (enforcing forum selection clause transferring venue to Illinois where opposing party was not an Indiana franchisee). As the Indiana Court of Appeals has explained, and Honest Abe appears to concede, "Indiana and Illinois are contiguous states and the distance between the two . . . may be traversed by automobile in several hours." *Id.* The interest-of-justice factors weigh in favor of transferring this case to the Central District of Illinois, consistent with the forum selection clause in the Franchise Agreement.

### B. The Proper Venue

Although the Franchise Agreement's forum selection clause is sufficient to transfer this case, the parties alternatively dispute whether the Southern District of Indiana is the proper forum at all. Defendants invoke Rule 12(b)(3), which would dismiss this case for "improper venue." [Filing No. 14 at 1.]

Defendants argue that the Central and Southern Districts of Illinois are proper venues while the Southern District of Indiana is not because "[a]ll of the events or omissions giving rise to Honest Abe's claims occurred in Illinois." [Filing No. 15 at 5.] They point to the Franchise Agreement, which provides for a franchised business in Illinois, which Defendants operated only in Illinois. [Filing No. 15 at 6.] As for acts and omissions giving rise to Honest Abe's claims in this case—alleged missed payments, failure to provide financial information, and other noncompliance with the Franchise Agreement—Defendants argue those claims are based on

10

events that happened in Illinois.  [Filing No. 15 at 6-7.]  In comparison, they argue, events that took place in Indiana such as company trainings and a swearing in ceremony do not comprise "'substantial part[s]' of the events or omissions' supporting Honest Abe's claims."  [Filing No. 15 at 5 (citation omitted).]

Honest Abe argues that the Southern District of Indiana is a proper venue because "a substantial amount of the facts giving rise to Honest Abe's claims occurred in this District."  [Filing No. 22 at 4 (capitalization omitted).]  Honest Abe argues that venue focuses on "the nexus between the facts and the cause of action, not the defendant and the cause of action."  [Filing No. 22 at 4.]  For events to be substantial, Honest Abe asserts, they need only be part of the lawsuit's "historical predicate."  [Filing No. 22 at 5.]  In that regard, Honest Abe argues that events and omissions in Indiana form part of this lawsuit's historical predicate, pointing to performance of the Franchise Agreement in this District, execution of the contract in this District, and franchisee training in this District.  [Filing No. 22 at 5-6.]  Honest Abe argues that Defendants erroneously "limit their analysis of relevant events to their own performance (or lack thereof) under the Franchise [A]greement."  [Filing No. 22 at 7 (emphasis omitted).]  Honest Abe argues that the venue statute considers the conduct of both parties.  [Filing No. 22 at 7.]

In reply, Defendants argue that "Honest Abe's claims against Defendants—alleged failures to make certain payments and report certain data—relate only to Defendants' performance or nonperformance in Illinois."  [Filing No. 24 at 2.]  They assert that "[i]f the plaintiff's home [were] sufficient, venue almost always would be proper at the place of the plaintiff's residence," something specifically rejected by amendments to the venue statute.  [Filing No. 24 at 3 (citation and internal quotation marks omitted).]

11

The federal venue statute, 28 U.S.C. § 1391(b), determines whether venue is proper; if improper, venue must be dismissed or transferred pursuant to 28 U.S.C. § 1406. *Atl. Marine Constr. Co.*, 571 U.S. at 56. Unlike an analysis under Section 1404, under Section 1406, "a forum-selection clause has no bearing on whether a case" has the proper venue. *Atl. Marine Constr. Co.*, 571 U.S. at 56. In a civil case, venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

No Defendant resides in Indiana, which rules out § 1391(b)(1). There exists at least some district in which this action can be brought, which rules out § 1391(b)(3). That leaves § 1391(b)(2), the judicial district in which a "substantial part of the events or omissions giving rise to the claim occurred." "The test of determining whether a 'substantial part' of the events or omissions giving rise to a claim occurred in a particular district is more of a qualitative, rather than quantitative inquiry." *Estate of Moore v. Dixon*, 460 F. Supp. 2d 931, 936 (E.D. Wis. 2006) (interpreting identical language in § 1391(a)(2) and citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432-33 (2d Cir. 2005)). A majority of the events giving rise to the claim need not have taken place in a particular district for venue to be proper, so long as a substantial portion of the events occurred there. *Estate of Moore*, 460 F. Supp. 2d at 936 (citation omitted). "Finally, in order for events to be deemed 'substantial' under the statute, they must have a 'close nexus' to the alleged claim." *Id.* (quoting *Daniel*, 428 F.3d at 433).

12

At the outset, the parties dispute what is meant by "substantial part of the events or omissions giving rise to the claim." Defendants argue that "substantial part" "focuses on the activities of the defendant, not the plaintiff, and those activities[] must share a connection to the elements of the claim." [Filing No. 24 at 2-3.] Honest Abe argues that "substantial part" consists of those events comprising the lawsuit's "historical predicate." [Filing No. 22 at 5.] This issue has split the circuits. *See Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42-43 n.6 (1st Cir. 2001) (noting the First, Second, Third, and Sixth Circuits use a holistic standard); *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (focusing on the conduct of the defendant). The Court's research has not identified Seventh Circuit authority choosing a side in the split. Regardless of which standard is applied, though, the Southern District of Indiana is not a proper venue.

    1.    The Alleged Conduct of the Defendants

Generally, venue rules are "designed to protect the defendant's convenience, not the plaintiff's." *Federal Deposit Ins. Corp. v. Hartford Ins. Co. Of Illinois*, 877 F.2d 590, 594 (7th Cir. 1989). In most instances, the purpose of statutorily specified venue is to "protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.*, 99 S. Ct. 2710, 2716 (1979). "[I]t is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts." *Id.* at 2717 (discussing prior version of Section 1391, which allowed venue in "the judicial district . . . in which the claim arose").[2]

---

[2] See generally *KM Enterprises, Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 724 (7th Cir. 2013) ("Section 1391 was amended by the Federal Courts Jurisdiction and Venue Act of 2011, Pub.L. No. 112–63. The Act eliminated a longstanding distinction between venue in civil cases brought under federal question jurisdiction and those brought under diversity jurisdiction and rearranged several subsections. While the Act's amendments, which became effective in January 2012, apply to this case, they have no substantive effect on our analysis.").

Consequently, "[v]enue under 28 U.S.C. § 1391 usually respects defendants' interests." *Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1036 (7th Cir. 2000).

Focusing on the conduct of Defendants, the Court observes that Defendants include an Illinois franchisee, operating exclusively in Illinois, and operating under the Illinois Franchise Disclosure Act. Defendants either did or did not abide by their obligations to obey franchisee rules, maintain advertising, and remit monies—the basis for this lawsuit—all from the State of Illinois. Illinois is a proper venue. Indiana is not.

### 2. The Historical Predicate of the Suit

Alternatively, the Court analyzes whether venue is proper by focusing on this case's historical predicate. In this analysis, "[i]t would be error . . . to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries." *Vera Bradley Designs, Inc. v, Denny*, 2018 WL 3633986 at *4 (N.D. Ind. July 30, 2018) (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)). Although Honest Abe allegedly did not receive its payments in Indiana, and some of its trainings occurred in Indiana, the conduct giving rise to its claim arose in Illinois. That is where Defendants reside, carried out their franchise, and allegedly breached the franchise provisions. *See also Cottman Transmission Systems, Inc. v. Martino and Trans One II, Inc.*, 36 F.3d 291, 292 (3d Cir. 1994) (holding that "venue does not lie in a district where the individual defendant did not conduct his business and did not carry out any infringing activities. . . . [T]he case [should be] transferred to the district where the defendant resides and carries on his business."). Illinois is a proper venue. Indiana is not.

When a case is filed in an improper venue, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been

brought." 28 U.S.C. § 1406(a). Given the Court's analysis of the forum selection clauses, it remains in the interest of justice to transfer this case to the Central District of Illinois. *See Atl. Marine Constr. Co.*, 571 U.S. at 63 (holding that the interest of justice under § 1404(a) is served by enforcing a valid forum selection clause "in all but the most exceptional cases").

## IV.
### CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss or Transfer, [14], is **GRANTED IN PART** and **DENIED IN PART** as follows:

- The motion is **GRANTED** to the extent that Defendants seeks to transfer this case to another venue; and

- The motion is **DENIED** in all other respects.

The Clerk is **DIRECTED** to **TRANSFER** this case to the United States District Court for the Central District of Illinois.

Date: 12/6/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

15